# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS H. LAU, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 06 C 3141 |
| v. ) ) | Judge Ronald A. Guzmán |
| ARROW FINANCIAL SERVICES, LLC, a Delaware limited liability company, ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas H. Lau has filed suit, on behalf of himself and all others similarly situated, against Arrow Financial Services, LLC ("Arrow") alleging that it violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Before the Court are Arrow's objections to Magistrate Judge Ashman's Report and Recommendation ("R&R") that the Court grant plaintiff's amended motion for certification of a class and a subclass. For the reasons set forth in this Memorandum Opinion and Order, the Court adopts Magistrate Judge Ashman's R&R in full and grants plaintiff's motion.

## Background

In 1993, plaintiff initiated bankruptcy proceedings in the Northern District of Alabama. (Second Am. Compl. ¶ 8.) The bankruptcy court sent notice to plaintiff's creditors, including Parisian, a chain of specialty department stores with which plaintiff had a consumer credit card

account. (*Id.* ¶¶ 6-8.) In 1997, the bankruptcy court discharged plaintiff's debts, including the amount he owed to Parisian. (*Id.* ¶ 11.)

Nine years later, Arrow purchased plaintiff's account along with thousands of other allegedly delinquent Parisian accounts. (*Id.* ¶¶ 16-20.) When it purchased the portfolio of accounts, Arrow employed Lexis-Nexis/Banko to identify which accounts were uncollectible because of the account holder's bankruptcy or death. (*Id.* ¶ 17.) However, Arrow instructed Lexis-Nexis/Banko only to search records from the previous ten years. (*Id.* ¶ 18.) Because plaintiff had filed for bankruptcy more than ten years earlier, his account was not identified as uncollectible. (*Id.* ¶ 21.)

On March 30, 2006, Arrow sent plaintiff a letter demanding payment of the Parisian debt, which said:

> ARROW FINANCIAL SERVICES purchased your A.F.S. ASSIGNEE OF HSBC BANK NEVADA NA account with PARISIAN charges. As the new owner of your account we would like to give you another chance to resolve your outstanding balance. . . [sic]
>
> Unless you notify us within 30 days after receiving this letter that you dispute the validity of the debt or any portion thereof, we will assume the debt is valid. If you notify us in writing within 30 days after receiving this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt [or] obtain a copy of a judgment and mail you a copy of such verification or judgment. Also, upon your written request within 30 days, we will provide you with the name and address of the original creditor if different from the current creditor.

(*Id.*)

On April 4, 2006, plaintiff called Arrow and disputed the debt with one of its debt collectors. (*Id.* ¶ 23.) After plaintiff told the collector that his debt had been discharged, the collector demanded that plaintiff provide proof of his bankruptcy. (*Id.* ¶ 24.)

2

Plaintiff alleges that Arrow violated § 1692(e) and (g) of the FDCPA because it attempted to collect a debt that was not owed, used a collection letter that falsely implies Arrow purchased plaintiff's Parisian account from an independent entity, and demanded proof of bankruptcy from plaintiff when he called to dispute the debt. (*Id.* ¶¶ 32-41.)

The class plaintiff seeks to have certified includes all persons in the United States from whom, during the period June 8, 2005 to the present, Arrow attempted to collect a delinquent consumer debt originally owed to Parisian but later discharged in bankruptcy via the same collection letter it sent plaintiff. (*Id.* ¶ 42.) The subclass includes all persons in the class who notified Arrow within the thirty-day validation period that their accounts were discharged in bankruptcy and from whom Arrow demanded proof of the bankruptcy. (*Id.* ¶ 43.)

## Discussion

The Court is required to make a *de novo* determination of those portions of the R&R to which Arrow objects. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify" the R&R, "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

To certify a class, the Court must find that plaintiff has satisfied the four requirements of Rule 23(a), which are:

> (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997) (quoting Rule 23). Plaintiff must also satisfy one of Rule 23(b)'s requirements, *id.* at 615, in this case, that questions of law or fact

3

common to the class predominate over individual questions and a class action is a superior method of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Arrow argues that Magistrate Judge Ashman incorrectly granted plaintiff's motion for class certification because: (1) he did not perform the factual inquiry necessary for determining whether certification is appropriate (Def.'s Objs. at 2-6); (2) the class members cannot be objectively identified (*id.* at 6-9); (3) there is insufficient evidence of numerosity (*id.* at 9-11); (4) plaintiff's claims are not typical of the class claims (*id.* at 11-12); and (5) plaintiff failed to establish that common issues predominate over individual issues (*id.* at 12-15). The Court will address each objection in turn.

Arrow first argues that the Magistrate Judge failed to make the factual investigation mandated by the Seventh Circuit in *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001). "Before deciding whether to allow a case to proceed as a class action," the *Szabo* court said, "a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 675-76. Moreover, the court said, "if some of the considerations under Rule 23(b)(3) . . . overlap the merits . . . then the judge must make a preliminary inquiry into the merits." *Id.* at 676. Unfortunately, the court did not say how far such a "preliminary inquiry" should go.

After *Szabo*, however, courts in this district have concluded that:

> the "preliminary inquiry into the merits" discussed in *Szabo* is a . . . limited one, that has as its focus not the substantive strength or weakness of the plaintiffs' claims but rather whether the path that will need to be taken to decide the merits renders the case suitable for class treatment. It is in this limited sense that the Court assesses the "merits" of plaintiffs' allegations in considering the class certification motion.

*Humphrey v. Int'l Paper*, No. 02 C 4147, 2003 WL 22111093, at *3 (N.D. Ill. Sept. 11, 2003); *see Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, No. 04 C 7643, 2007 WL 2039534, at *1 (N.D.

Ill. July 17, 2007) ("This court does not read *Szabo* so broadly as to require the court to reach the ultimate issue in the case on a Rule 23 motion."); *Muniz v. Rexnord Corp.*, No. 04 C 2405, 2005 WL 1243428, at *1 (N.D. Ill. Feb. 10, 2005) (stating that *Szabo* does not require the Court to "determine the substantive strength or weakness of the allegations in the complaint but rather the merits of the allegations only as they bear on the suitability of a class action suit under Rule 23(a) and (b)."). With these principles in mind, we turn to Arrow's specific objections.

**Class Definition**

A class definition must satisfy two prerequisites: "[T]he class must be sufficiently defined so that the class is identifiable" and "the named representative[] must fall within the proposed class." *Humphrey*, 2003 WL 22111093, at *4 (quotations omitted). Arrow argues that the definition of the proposed class and subclass do not satisfy the first requirement because the former does not allow the class members to be readily identified and the latter is based on subjective criteria. The Court rejects both of these arguments.

Plaintiff need not identify each class member to secure class certification. *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 212 (N.D. Ill. 2002). The proposed class must be sufficiently defined, however, to demonstrate that a class exists. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* A class definition that requires the Court to assess subjective criteria, like the class members' state of mind, will not be certified. *Id.*

Arrow contends that the class definition proposed by plaintiff is inadequate because the process of identifying class members would be administratively burdensome. Specifically, Arrow

says that determining whether a class member's debt was discharged in bankruptcy will require inquiry into the records of each potential class member. However, this obstacle is not so daunting as to make the class definition insufficient. In fact, courts in this district have previously certified classes in which the definition required investigation into various records to determine which individuals from a large population qualify for class membership. *See, e.g., Gomez*, 117 F.R.D. at 397 (granting motion to certify a class that required identification of all Spanish-speaking children eligible to enroll in public school in Illinois who should have been assessed for English proficiency).

If the class definition requires the Court to conduct an investigation into the merits of each potential member's claim, the definition is deficient. *Pastor v. State Farm Mut. Auto. Ins. Co.*, No. 05 C 1459, 2005 WL 2453900, at *2 (N.D. Ill. Sept. 30, 2005) (denying class certification because proffered class definitions would require the court to "address the central issue of liability in order to determine class membership"), *aff'd*, 487 F.3d 1042 (7th Cir. 2007). In this case, however, the Court need not investigate the merits of the claims to define the class but can do so by assessing two objective criteria, whether each claimant: (1) received the debt collection letter; and (2) had his or her debt discharged in bankruptcy. Thus, the Court agrees with Magistrate Judge Ashman that the definition of the proposed class is sufficient. *Gomez*, 117 F.R.D. at 397.

The subclass definition is sufficient as well. The objective criteria that define the subclass are: (1) contesting the debt collection within thirty days; and (2) receiving a demand from Arrow for proof of bankruptcy. Arrow argues that the putative class members from whom proof was demanded cannot be objectively determined because its records do not show that its collectors ever made such demands. (Def.'s Objs. at 8.) Though the words "demand for proof" may not appear in its records, Arrow admits that its collectors "requested . . . discharge order[s]," and "asked for

[bankruptcy-related] information" from debtors who said their debts had been discharged. (*Id.* at 9.) Morever, Arrow's Rule 30(b)(6) representative testified that the company has a policy requiring its debt collectors to ask debtors who claim that their debt has been discharged to "send in something to prove it." (Pl. Resp. Def.'s Objs., Ex. A, Cutler Dep. at 108.) In the face of these admissions, Arrow's objection rings hollow.

## **Numerosity**

"The exact number of class members need not be pleaded or proved," to satisfy the numerosity requirement, "but impracticability of joinder must be positively shown and cannot be speculative." *Parker*, 206 F.R.D. at 212. The Court may rely on common sense assumptions and reasonable inferences in determining whether the numerosity requirement is met. *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). Still, the plaintiff must provide some evidence that the class exists; mere speculation will not suffice. *Id.* at 511; *Parker*, 206 F.R.D. at 212.

In determining the impracticality of joinder, the Court considers factors like class size, geographic location of the class members and "the practicality of forcing relitigation of common core issues." *Gomez*, 117 F.R.D. at 399. There is no "magic" number at which joinder becomes impractical. *Ringswald*, 196 F.R.D. at 512. However, courts in this circuit have held that "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Id.*; *see Massie v. Ill. Dept. of Transp.*, No. 96 C 4830, 1998 WL 312021, at *2 (N.D. Ill. June 5, 1998) (finding that a class of fifty-three members satisfied numerosity).

Arrow argues that numerosity is lacking here because it is impossible to tell from its records whether any Parisian account holders had their debt discharged and, therefore, fall within the class. (Def.'s Objs. at 10.) The fate of this motion does not, however, rest solely on the contents of Arrow's records. When this motion was presented to Magistrate Judge Ashman, plaintiff had determined, by analyzing public bankruptcy records as well as Arrow's records that seventy people met the class definition.[1] Given that evidence, the Court agrees with Magistrate Judge Ashman that the proposed class satisfies the numerosity requirement. *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("[A] class action may proceed upon estimates as to the size of the proposed class.")

Arrow makes similar arguments with respect to the subclass. It asserts that the size of the subclass cannot be determined based on Arrow's records and the twenty-six subclass members identified by plaintiff is too few to satisfy the numerosity requirement. (Def.'s Objs. at 10-11.) Neither argument is convincing.

Contrary to its assertion, Arrow's records show that its debt collectors repeatedly requested proof of bankruptcy. (*See* Def.'s Objs., Group Ex. A, Summary of Account Histories (characterizing collectors' requests as "ask[ing] for a copy of the discharge," "ask[ing] for the [debtor's] attorney's name and documents" and "request[ing] information about the bankruptcy.").) Further, though twenty-six members is below the presumptively-numerous forty mark, courts in a number of cases have certified classes of similar or smaller size. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 66 (N.D. Ill. 1986) (certifying a class of twenty-nine); *Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D. Ill. 1983)

---

[1] Arrow continued its analysis after the Magistrate Judge's ruling and, as of the time it responded to Arrow's objections, had identified 358 people who meet the class definition. (*See* Pl.'s Resp. Objs. at 8-9.)

8

(certifying a class of seventeen because "[i]t would be extremely difficult to individually join the members of [the proposed] group and expect each member to actively and meaningfully participate in the ensuing litigation"). Accordingly, the Court agrees with Magistrate Judge Ashman that both the class and subclass satisfy the numerosity requirement of Rule 23(a).

## Typicality

The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation omitted). Rule 23(a)(3) may be satisfied "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Id.* As long as the claims of the class members have "the same essential characteristics" as those of the named plaintiff, typicality is established. *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *3 (N.D. Ill. Apr. 25, 2007) (quotation omitted).

There is no question that plaintiff's legal theory is typical of those of the class members; all plaintiffs' claims arise out of Arrow's alleged violations of the FDCPA. *See Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (finding that named plaintiff's claim was typical because class members were all suing under FDCPA "alleging violations of the same statutory sections under the same legal theory"). But Arrow argues that the conduct giving rise to the claims is too dissimilar to establish typicality. (Def.'s Objs. at 11-12.)

In Arrow's view, the account notes for the subclass, which show that collectors asked for bankruptcy information in various ways, show that the "debtors' experiences were different." (*Id.*

9

at 12.) Plaintiff says that the differences between the debtors' conversations as evidenced by Arrow's account notes do not destroy typicality.

The Court agrees with plaintiff. Arrow's records show that, among other things, its collectors "advised [a consumer] to forward the discharge papers," asked another "to fax a copy of the bankruptcy papers," and asked another to send "the information to verify the bankruptcy" (Def.'s Objs., Group Ex. A, Summary of Account Histories), all of which are demands for proof that the debt was discharged. The slight difference in the language used by Arrow's debt collectors is not enough to defeat certification for want of typicality. *Young*, 2007 WL 1238920, at *6 ("The likelihood of some range of variation in how different groups of new detainees were treated does not undermine the fact that the claims of each class share a common factual and legal theory."); *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2007 WL 898600, at *4 (N.D. Ill. 2007) (setting "[m]inor factual discrepancies aside" to find that typicality was established).

Moreover, the Seventh Circuit's decision in *Payton v. Kane*, 473 F.3d 845 (7th Cir. 2007), does not suggest that it is. The plaintiffs in *Payton* challenged on constitutional grounds the Illinois statute that permits each county to charge pre-trial detainees an administrative fee in excess of $1.00 to post a bond. *Id.* at 846. Plaintiffs sought to represent a state-wide class of pre-trial detainees who had been charged more than $1.00 by any of the state's thirty-nine counties. *Id.* at 846-47. The district court denied class certification for lack of typicality because the determination of each claim turned on a number of individualized factors including whether each county acted arbitrarily and capriciously when setting bond fees, whether each county released prisoners who made bond but did not pay the fee and whether judges properly set bond and fees. *Id.* at 853-54.

Unlike the class claims in *Payton*, the fate of the FDCPA claims in this case does not depend on a host of individualized factors. Rather, the FDCPA claims turn on two issues they share: whether Arrow improperly attempted to collect a debt that was not owed and whether Arrow improperly demanded proof of bankruptcy from consumers who disputed their debt. The fact that Arrow's debt collectors did not use identical language in attempting to collect the class members' debts does not transform these common issues into individual inquiries. In short, the Court agrees with Magistrate Judge Ashman that plaintiff's claims are typical of the claims of both the class and subclass.

**Predominance**

Arrow also takes issue with Judge Ashman's conclusion that questions of law or fact common to the class predominate over individual questions. Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Foreman v. PRA III*, LLC, No. 05 C 3372, 2007 WL 704478, at *11 (N.D. Ill. Mar. 5, 2007) (alterations and quotation omitted). As Judge Ashman noted, the evidence required for the proposed classes in this case is general and objective. Putative class members either did or did not receive the form letter from Arrow after their debt was discharged, and putative subclass members either were or were nor told to provide proof of their bankruptcies.

Nonetheless, Arrow argues that the inquiry is individualized because plaintiffs can prevail on their the FDCPA claims only if each class members testifies that he or she was misled by the collection letter. (Def.'s Objs. at 13.) Arrow cites to *Turner v. J.V.D.B. & Associates Inc.*, 202 Fed.

11

App. 123 (7th Cir. 2006), an unpublished order, for this proposition. (*See id.*, Ex. B.) According to Seventh Circuit Rule 32.1, however, unpublished orders "are not treated as precedents." Thus, *Turner* does not advance Arrow's case.

In short, Judge Ashman properly found that Rule 23(b)(3) is satisfied for both the class and subclass.

## Conclusion

For the reasons set forth above, this Court adopts Magistrate Judge Ashman's R&R in full and grants the plaintiffs' amended motion to certify the class and subclass [doc. no. 74].

**SO ORDERED.** ENTERED: 9/28/07

*/s/ Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States District Judge**